Dear Mr. Breaux:
You have requested a legal opinion regarding the waterworks district's waiving or adjusting downward water bills which ran unduly high because of leaks caused by Hurricane Gustav.
One group of customers to whom this happened live in low lying areas of the parish and were under a mandatory evacuation order by the parish president. You explain this mandatory evacuation prohibited these customers from turning off the water and fixing the broken water pipes until days after the storm and that, in the absence of having to evacuate, these customers would have immediately after the storm turned off the water and thereby eliminated the high water bill.
You also ask about those customers who were not under a mandatory order of evacuation but whose water pipes were broken by the forces of the hurricane — acts of God — resulting in a somewhat higher water bill than usual.
You say you are aware of attorney general opinions concluding that water bills may not be waived or adjusted downward, if the water passes through the meter assigned to the customer. Some attorney general opinions so conclude. They include Attorney General Opinions 97-425 (town council cannot adjust the water bill of a town resident or business when all evidence indicates that the meter was properly read and that the meter was properly working), 99-375 (there can be no reduction by the town on a water bill in which the town had no responsibility for the leak), 01-316 (waterworks district cannot adjust the water bill of a customer who had a leak on the customer side of the meter), and 03-155 (town of Arcadia may not adjust water bill due to water leak if the leak was not caused by the town but may do so if the leak was caused by the town). Copies of these opinions are enclosed. In every case where it was thus concluded, the reason for the denial of waiver or downward-adjustment was the constitutional prohibition, contained in La.Constitution art. 7, § 14, against government's donating *Page 2 
public funds and resources to private persons for private purposes. Public funds and resources must be used for ultimately public purposes.
Here, however, the legislature has designated that relief from hurricanes and other natural disasters creating emergencies is a public purpose. R.S. 29:722 reads, in pertinent part,
 A. Because of the existing possibility of the occurrence of emergencies and disasters of unprecedented size and destructiveness resulting from terrorist events, enemy attack, sabotage, or other hostile action, or from fire, flood, earthquake, or other natural or manmade causes, and in order to ensure that preparations of this state will be adequate to deal with such emergencies or disasters, and in order to detect, prevent, prepare for, investigate, respond to, or recover from these events, and generally to preserve the lives and property of the people of the state of Louisiana, it is hereby found and declared to be necessary:
 * * * (2) To confer upon the governor and upon theparish presidents the emergency powers provided in this Chapter.
 * * * (4) To reduce vulnerability of people and communities of this state to damage, injury, and loss of life and property resulting from natural or man-made catastrophes, riots, acts of terrorism, or hostile military or paramilitary action.
 (5) To prepare for prompt and efficient evacuation, rescue, care, and treatment of persons victimized or threatened by disasters or emergency.
 (6) To provide a setting conducive to the rapid and orderly start of restoration and rehabilitation of persons and property affected by emergencies or disasters.
 * * *
(Emphases added.)
In addition, La.Constitution art. 1, § 1, provides,
§ 1. Origin and Purpose of Government
 Section 1. All government, of right, originates with the people, is *Page 3 
founded on their will alone, and is instituted to protect the rights of the individual and for the good of the whole. Its only legitimate ends are to secure justice for all, preserve peace, protect the rights, and promote the happiness and general welfare of the people. The rights enumerated in this Article are inalienable by the state and shall be preserved inviolate by the state.
(Emphases added.) Consequently, in light of the above-quoted provisions, Attorney General Opinion 99-94 reasoned,
 We are of the opinion that a distinction should be made between the ordinary day-to-day use of parish personnel and equipment for the benefit of private individuals, and the use of these same resources to promote the general welfare of the people of this State during times of disaster and emergency.
This opinion went on to conclude that the general rule is that the use of parish equipment and labor on private property is prohibited by La.Constitution art. 7, § 14 but that such governmental resources may indeed be utilized on private property in the event of an emergency or disaster in support of the general welfare of the people to preserve their property and recover from such disaster. See also Attorney General Opinion 05-360. Copies of these two opinions are also enclosed.
In this particular case, the parish president exercised his statutorily granted power to mandate that persons living in low lying areas of the parish evacuate, and such evacuation prevented these people from cutting off the water and eliminating the water flow at their places of residence or business. The water flow was not caused by them or the waterworks district but rather by an act of God, the hurricane, a natural disaster. In this situation, there can be little doubt that it would be a public purpose for the waterworks district to waive or adjust downward the high water bills resulting from such water flow. If the waterworks district did not do so, the waterworks district would be penalizing these people for obeying a lawful order of the parish president in an emergency and would act as a deterrent to their obeying such an order in the future when another emergency or natural disaster might threaten the parish. Moreover, the waiver or downward-adjustment of these high water bills assists in the recovery effort that the people must make now in the wake of the disaster.
We think that this same analysis applies to those people who were not forced to evacuate but had their water pipes broken, causing water leaks, by the hurricane. It is the same emergency, and huge is the recovery effort required by the hurricane's damages. However, the amount of downward-adjustment as to these people might be less than those who were forced to evacuate and could not return immediately.
All of this, nevertheless, raises a separate question as to the amount of the waiver or downward-adjustment. As Attorney General Opinion 99-94 reasoned, a distinction should be made between the amount representing the ordinary day-to-day actual *Page 4 
private use of water obtained from the waterworks district and the additional water flow because of damage caused by the natural disaster. Certainly, a waiver or downward-adjustment of the latter amount should be sufficient to promote the general welfare of the people of this State during this time of disaster and emergency. At the same time, the amount representing the ordinary day-to-day private use of water should not include the time or days that the people were forced to be away from their residences or businesses because of the hurricane; a theoretical amount, instead of an actual amount, should not be imputed to them. The major point here is that the waterworks district should analyze the water bills and come to a reasonable conclusion as to how much of a waiver or downward-adjustment it should give. The goal should be to charge for any ordinary day-to-day actual private use of the water during the period before and/or after the hurricane and the recovery effort — that is, any ordinary day-to-day usage that might be on the bill — and to waive the additional amounts caused by the hurricane itself and occurring in its aftermath. In doing so, the waterworks district will avoid the donation of governmental resources to private persons for strictly private purposes but assist in the preservation of property and recovery effort for the welfare of the people and for public purposes as relates to the hurricane.
We trust that this opinion has sufficiently answered your request, but if you have any further questions, please do not hesitate to ask them of us. With warmest regards, we remain
 Yours very truly,
 JAMES D. "BUDDY" CALDWELL ATTORNEY GENERAL
 By:__________________________ THOMAS S. HALLIGAN Assistant Attorney General
 JDC/TSH/sfj encl: *Page 5 
OPINION NUMBER 05-0360
Mr. Charles Tate Director of Planning Governor's Office of Community Programs
It is the opinion of this office that, while in general, the use of parish equipment and labor on private property is prohibited by Article VII Section 14 of the Louisiana Constitution, public equipment and labor, which may include more than only parish equipment and labor in catastrophic circumstances, may be used without an authorized right of entry to protect the residential private property of the citizens in those areas in southeast Louisiana that experienced such severe flooding that the citizens have been unable to return to their homes in the event of a declaration of an emergency or disaster in accordance with R.S. 29:721
et seq.
Dear Mr. Tate:
You have requested an opinion of the Attorney General concerning the use of public equipment and labor on private property in the midst of the worst disaster in Louisiana's history, Hurricane Katrina and its aftermath, and whether our earlier opinion in La.Atty.Gen. Op. No. 92-637 could be extended to assist in reducing the damage to private residential property.
The federal government and federal contractors are available to place plastic sheeting on those roofs of residential dwellings that have obvious holes and to remove large pieces of debris from private residential property that an individual would be unable to remove himself, such as, large trees and water-damaged cars and trucks. In addition, in this disaster the persons living in the parishes in southeast Louisiana were under a mandatory evacuation order beginning on August 25, 2005.
You specifically ask, under what circumstances can a parish utilize not only parish equipment and labor, but also other public equipment and labor under the supervision of the parish on private property in emergency or disaster situations where the residential property owner cannot be reached because of a mandatory evacuation and where the purpose of the entry on private property is to protect the residential dwelling from further damage.
Initially, as was noted in La. Atty.Gen. Op. No. 92-637, Article VII, Section 14 of the 1974 Louisiana Constitution generally prohibits the funds, credit, property or things of value of the state or any political subdivision from being loaned, pledged or donated to or for any person, association or public or private corporation. This constitutional provision recognizes certain exceptions to this general prohibition, one of which is the use of public funds for programs of social welfare for the aid and support of the needy. *Page 6 
We have also issued opinions recognizing the legality of the use of parish and/or municipal equipment and labor for the benefit of private individuals in accordance with systematic programs of financial support for the needy.
In so holding, we note that the parish or municipality should establish objective eligibility requirements to ensure that the activity truly serves only the needy. Attorney General Opinion Nos. 96-348, 94-157, 92-780, 80-115, 78-1259 and 78-1262. We now turn to the issue of emergency conditions. Article I, Section 1 of the Louisiana Constitution provides the following:
 s 1. Origin and purpose of government
 All government, of right, originates with the people, if founded on their will alone, and is instituted to protect the rights of the individual and for the good of the whole. Its only legitimate ends are to secure justice for all, preserve peace, protect the rights, and promote the happiness and general welfare of the people. The rights enumerated in this Article are inalienable by the state and shall be preserved inviolate by the state.
We noted in La. Atty.Gen. Op. No. 92-637 a distinction should be made between the ordinary day-to-day use of parish personnel and equipment for the benefit of private individuals, and the use of these same resources to promote the general welfare of the people of this State during times of disaster and emergency. We found support for our position in R.S. 29:721 through 736 entitled, "Louisiana Emergency Assistance and Disaster Act" (Act). Section 722 enumerates the purposes for which the Act was passed, including the following:
 A. Because of the existing possibility of the occurrence of emergencies and disasters . . . resulting from . . . fire, flood, earthquake, or other natural or man-made causes and in order to ensure that preparations of this state will be adequate to deal with such emergencies or disasters, and generally to preserve-the lives and property of the people of the state of Louisiana, it is hereby found and declared to be necessary:
 * * * (2) To confer upon the governor and the parish presidents the emergency powers provided in this Chapter.
 * * * (4) To reduce vulnerability of people and communities of this state to damage, injury and loss of life and property resulting from natural or man-made catastrophes. . . . *Page 7 
 (5) To prepare for prompt and efficient evacuation, rescue, care and treatment of persons victimized or threatened by disasters or emergency.
 (6) To provide a setting conducive to the rapid and orderly start of restoration and rehabilitation of persons and property affected by emergencies or disasters.
 (7) To authorize and provide for cooperation in emergency or disaster prevention, mitigation, preparedness, response, and recovery.
 Section 723 defines the following terms for purposes of the Act: (1) "Disaster" means the result of a natural or man-made event which causes loss of life, injury, and property damage, including but not limited to natural disasters such has hurricane, tornado, storm,
 flood, high winds, and other weather related events. . . .
 * * * (4) "Local governmental subdivision" means a parish of the state of Louisiana.
 (5) "Parish president" means the president of any parish, mayor-president, mayor of New Orleans (Orleans Parish), or police jury president.
In particular, two of these subsections in Section 722: (4) To reduce vulnerability of people and communities of this state to damage, injury and loss of life and property resulting from natural or man-made catastrophes. . . . and (6) To provide a setting conducive to the rapid and orderly start of restoration and rehabilitation of persons and property affected by emergencies or disasters, suggest that to do otherwise than to engage all possible services to protect residential private property will reduce the state's ability to protect its citizens.
Here, in the aftermath of Hurricane Katrina where much of southeast Louisiana has been evacuated and Louisiana citizens are scattered in over thirty states, it is not possible to obtain a right of entry from the authorized landowner. However, various parishes want additional help for their residential property owners, but cannot provide that assistance because the parish workers themselves are evacuees.
Here to reduce the vulnerability of people and communities of this state to damage and further loss of property from this natural catastrophe, the most prudent course of action is to permit those parishes that wish to avail themselves *Page 8 
of the services of men and equipment that other public entities can provide, including the federal government and its contractors, best serves the Constitution of Louisiana and its people.
In addition, another subsection of Section 722: (7) to authorize and provide for cooperation in emergency or disaster prevention, mitigation, preparedness, response, and recovery, we have interpreted to mean, in Op. Atty.Gen. No. 01-0204, June 21, 2001, that once a local disaster or emergency is declared by parish presidents or emergency preparedness agencies designated by them, the parish is the primary authority in dealing with local disasters or emergencies. Nonetheless, the clear and overriding intent of the legislature was for cooperative interaction between responsible public agencies. Thus, we believe it particularly appropriate to provide guidance on the use of other than parish, yet public equipment and employees and appropriate public contractors.
Section 724 provides the procedures for the declaration of an emergency or disaster by the governor. Section 727 provides the procedures for the declaration of a local disaster or local emergency by a parish president. The purpose of these declarations is to give the governor and/or the parish president the reasonable and necessary powers to carry out the provisions of the Act.
Further, Section 735 grants general immunity to personnel of the State or any political subdivision thereof, for any actions carried out pursuant to the Act resulting in the death of, or injury to persons, or damage to property as a result of such actions.
In summary, it is the opinion of this office that, while in general, the use of parish equipment and labor on private property is prohibited by Article VII Section 14 of the Louisiana Constitution, public equipment and labor, which may include more than only parish equipment and labor in catastrophic circumstances, may be used without an authorized right of entry to protect the residential private property of the citizens in those areas in southeast Louisiana that experienced such severe flooding that the citizens have been unable to return to their homes in the event of a declaration of an emergency or disaster in accordance with R.S. 29:721 et seq.
As we did in responding in La. Atty.Gen. Op. No. 92-637, I am enclosing a copy of the "Louisiana Emergency Assistance and Disaster Act" for your reference and convenience. In all cases, discretion should be exercised so that the level of the services provided are not so excessive that they constitute an unconstitutional use of public personnel and equipment. *Page 9 
We hope this response adequately responds to your inquiry, however, if we can be of further assistance, please advise.
Respectfully submitted,
 CHARLES C. FOTI, JR. ATTORNEY GENERAL
 BY:__________________________ WILLIAM P. BRYAN, III, State of Louisiana *Page 10 
 Opinion Number 03-0155
Honorable Eugene Smith Mayor, Town of Arcadia P.O. Box 767 Arcadia, LA 71001 71 Municipalities 90-A-2 Public Funds — Loan, Pledge or Grants 167-B Utilities
La.R.S. 33:404
Article 7, Section 14 of the Louisiana Constitution
Town of Arcadia may adjust water bill due to water leak if the leak was
caused by the Town.
Mayor may recommend pay raises for Town employees and include them in the annual budget. The Council, however, must approve the budget.
Dear Mayor Smith:
The Town of Arcadia owns its water system. In the event of a water leak, you question who has the authority to adjust the bill; the mayor or the council member in the district where the leak occurs. You also question who has responsibility for granting pay raises to Town employees.
The Town of Arcadia should implement a policy for adjustments to bills in those instances when a customer claims a water leak. A credit policy may be implemented only in those instances where the damage to the water pipe was caused by the municipality. A municipality may not adjust a water bill when there is no such evidence because to do so would be tantamount to a donation of public funds which is expressly prohibited by Article 7, Section 14 of the Louisiana Constitution.[1] We recommend that the Town of Arcadia require a customer who claims he has a leak make the necessary repair and provide it with documentation of the repair and associated cost. It may then make an adjustment which is equal to the average of the customers last three months of water consumption, for example. Again, however, the bill should only be adjusted if the leak was caused by the Town. Any adjustment would have to be approved by vote of the council as a whole. One council member has no authority on his own to do so.
As Mayor, you have the responsibility of preparing and submitting an annual operations budget to the council for approval. You may recommend pay raises for your employees and provide for such in your recommended budget but the actual approval or granting of those raises would be a function of the council.[2] *Page 11 
We trust this adequately responds to your request. If you have any questions or comments, please do not hesitate to contact our office.
With kindest regards,
 Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY:__________________________ TINA VICARI GRANT Assistant Attorney General
RPI/TVG/dam *Page 12 
 OPINION NUMBER 01-316
Mr. Rickey A. Breaux, Commissioner Iberville Parish Waterworks District No. 3 P.O. Box 99 Plaquemine, Louisiana 70765-0099
90A-2 PUBLIC FUNDS-Loan, Pledge or Grants
 167-B UTILITIES-Public
 Art. VII, Sec. 14
 R.S. 42:1461
 Waterworks District cannot adjust the water bill of a customer who hada leak on the customer side of the meter.
Dear Mr. Breaux:
Reference is made to your recent request for an opinion of this office on behalf of the Board of Commissioners of Iberville Parish Waterworks District No. 3 (the "District"). According to your correspondence, the Board has been asked to adjust a water bill for a customer who sustained broken pipes (on the customer's side of the meter) during the flooding of Tropical Storm Allison. Apparently, high floodwaters prevented notice of the broken pipe for quite some time, but once the waters subsided, you advise that the customer immediately took necessary action to repair the break. Specifically, your letter states:
 "It is my understanding that Louisiana law currently prohibits a waterworks district from adjusting water bills for leaks which occur on the customer of the meter. However, due to the emergency and flooding caused by Tropical Storm Allison, may the Board of Commissioners authorize any type of adjustment to the customer's monthly billing statement without violating the law[?] . . . Additionally, the Board would like to know if under normal circumstances any type of adjustment can be made for customers who sustain leaks on their side of the meter."
Please be advised that La.Const. Art. VII, Sec. 14, generally prohibits the loan, pledge or donation of public funds, property or things of value to any person, association or corporation, public or private. Although we understand and admire the District's Board of Commissioners' interest in assisting a customer who sustained damage during, or as a result of a tropical storm, we must advise that if the District adjusts the water bill of a customer who sustained a leak on the customer side of the meter, the District is in essence donating a public thing of value to that resident or business, in violation of La.Const. Art. VII, Sec. 14. In our opinion, such action would be in violation of the constitution and therefore illegal. In accord: Atty. Gen. Ops. Nos. 90-498, 88-428, and 78-1562. *Page 13 
It is incumbent on us to further advise you that LSA-R.S. 42:1461
imposes a personal obligation upon public officials and employees and prohibits them from misappropriating, misapplying, converting or misusing any funds or property under the custody or control of the public entity in which the office or employment is held. The breach of this obligation gives rise to an action in favor of the public entity for the recovery of such funds or property.
Please note that La.Const. Art. VII, Sec. 14(B) contains an exception to the general rule of Art. VII, Sec. 14 in that the donation of public funds is permissible for programs of social welfare for the aid and support of the needy. In our opinion, the District could, in accordance with Art. VII, Sec. 14(B), establish a program whereby water bill adjustments and assistance could be provided to customers who can be classified as needy, if those who receive assistance are screened through objective criteria to ensure that they are truly needy. In Accord: Op. Atty. Gen. Nos. 00-14, 98-432.
We trust the foregoing to be of assistance. Please do not hesitate to contact us if we can be of assistance in other areas of the law.
 Yours very truly,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY:__________________________ JEANNE-MARIE ZERINGUE BARHAM Assistant Attorney General
RPI:JMZB:jv *Page 14 
 OPINION 99-375
Mr. Eugene Mayeaux, Mayor Town of Pollock P.O. Box 189 Pollock, LA 71467-0189 71 — Municipalities 90-A-2 — Public Funds 172-A — Water Districts
There can be no reduction by the Town on a water bill in which the Town had no responsiblity for the leak, there is justification for a reduction in the sewerge bi inasmuch as the water was not pass through the sewer system.
Dear Mayor Mayeaux:
This office is in receipt of your request for an opinion of the Attorney General in regard to an adjustment of a utility bill as requested by a customer. You set forth the facts as follows:
 The customer is serviced with water from another water system, Pollock Area Water and has sewer service with the Town of Pollock. He had a leak at a house he owns but does not reside in and 95,000 gallons of water was used in the amount of $225.83 which calculated his sewer usage for a total of $203.60. He paid the water bill and feels that the sewer bill should be adjusted since he claims it did not pass through the sewer system. Pollock Area Water did not adjust the water bill.
You indicate Atty. Gen. Op. No. 97-425 has been used as a guide, and you ask if it applies to this particular situation.
We find that Atty. Gen. Op. No. 97-425 can be applied to the issue in question as well as the more recent opinion, Atty. Gen. Op. No. 99-208.
In both opinions this office recognized that Const. Art. VII, Sec. 14 prohibits the loan, pledge or donation of public funds, property or things of value to any person, association or corporation, public or private. Accordingly, it was concluded only in those cases where damage to the water pipe was caused by the Village would a credit policy be appropriate whereby water usage would be adjusted down to average use for one month, and thereby result in a reduction of the water bill. Nevertheless, in Atty. Gen. Op. No 99-208 this office did conclude as follows:
 However, we believe a credit policy could be implemented relative to the sewerage fee due to the fact that the escaping water did not run through the Village' s sewerage system, but rather was returned through runoff into the groundwater and storm drainage system. *Page 15 
This conclusion appears to be directly applicable to your inquiry. Therefore, while there can be no reduction for a water bill in which the Town had no responsibility for the leak, there is justification for a reduction in the sewerage bill inasmuch as the water was not passing through the sewer system.
We hope this sufficiently answers your inquiry.
 Sincerely yours,
 RICHARD P. IEYOUB Attorney General
 By:__________________________ BARBARA B. RUTLEDGE Assistant Attorney General
RPI:bbr *Page 16 
 OPINION NUMBER 99-94
Ms. Hazel Wiley Acting Secretary-Treasurer CONCORDIA PARISH POLICE JURY 4001 Carter Street, Room 1 Vidalia, LA 71313
52 County Boards and Commissioners (Police Jury)
84 Parishes
90 Police Juries — Powers Functions
90-A-2 Public Funds — Loan, Pledge or Grants
Article I Section 1
Article VII Section 14
R.S. 29:721, 722, 723, 724, 727, and 735
Use of parish equipment and labor on private property is generally prohibited by Article VII Section 14. Exceptions exist when public equipment and labor are used for the benefit of private individuals in accordance with systematic programs of financial support of the needy. Further, parish labor and equipment may be dispatched for use on private property in the event of a declaration of emergency under R.S. 29:721 et seq.
Finally, a parish may dispatch personnel and equipment in response to emergencies involving private individuals and/or property, without the necessity of a formal declaration of emergency. In such cases, discretion should be exercised so that the level of the services provided are not so excessive that they constitute an unconstitutional use of public personnel and equipment.
Dear Ms. Wiley:
You have requested an opinion of the Attorney General relative to the use of parish equipment and labor on private property. You specifically ask, under what circumstances can parish equipment and labor be utilized on private property in emergency or disaster situations.
Initially, it should be noted that Article VII Section 14 of the 1974 Louisiana Constitution generally prohibits the funds, credit, property or things of value of the state or any political subdivision from being loaned, pledged or donated to or for any person, association or public or private corporation. This constitutional provision recognizes certain exceptions to this general prohibition, one of which is the use of public funds for programs of social welfare for the aid and support of the needy.
This office has issued numerous opinions which provide that parishes and other political subdivisions may not provide public funds, equipment and/or labor for work conducted on private property. Attorney General Opinion Nos. 97-99, 96-143, 96-42, 94-388, 94-102, 92-265, 87-464, 81-316, 81-60, 77-700 and 76-649.
We have also issued opinions recognizing the legality of the use of parish and/or municipal equipment and labor for the benefit of private individuals in accordance with systematic programs of financial support for the needy. In so holding, we note that the parish or municipality should establish objective eligibility requirements to ensure that the activity truly serves only the needy. Attorney General Opinion Nos. 96-348, 94-157, 92-780, 80-115, 78-1259 and 78-1262. We now turn to the issue of emergency conditions.
Article I, Section 1 of the Louisiana Constitution provides the following: *Page 17 
 § 1. Origin and purpose of government
All government, of right, originates with the people, if founded on their will alone, and is instituted to protect the rights of the individual and for the good of the whole. Its only legitimate ends are to secure justice for all, preserve peace, protect the rights, andpromote the happiness and general welfare of the people. The rights enumerated in this Article are inalienable by the state and shall be preserved inviolate by the state. (Emphasis added.)
We are of the opinion that a distinction should be made between the ordinary day-to-day use of parish personnel and equipment for the benefit of private individuals, and the use of these same resources to promote the general welfare of the people of this State during times of disaster and emergency. We find support for our position in R.S. 29:721
through 736 entitled, "Louisiana Emergency Assistance and Disaster Act" (Act). Section 722 enumerates the purposes for which the Act was passed, including the following:
 A. Because of the existing possibility of the occurrence of emergencies and disasters . . . resulting from . . . fire, flood, earthquake, or other natural or man-made causes and in order to ensure that preparations of this state will be adequate to deal with such emergencies or disasters, and generally to preserve the lives and property of the people of the state of Louisiana, it is hereby found and declared to be necessary:
 * * * (2) To confer upon the governor and the parish presidents the emergency powers provided in this Chapter.
 * * * (4) To reduce vulnerability of people and communities of this state to damage, injury and loss of life and property resulting from natural or man-made catastrophes. . . .
 (5) To prepare for prompt and efficient evacuation, rescue, care and treatment of persons victimized or threatened by disasters or emergency. *Page 18 
 (6) To provide a setting conducive to the rapid and orderly start of restoration and rehabilitation of persons and property affected by emergencies or disasters.
 (7) To authorize and provide for cooperation in emergency or disaster prevention, mitigation, preparedness, response, and recovery. (Emphasis added.)
Section 723 defines the following terms for purposes of the Act:
 (1) "Disaster" means the result of a natural or man-made event which causes loss of life, injury, and property damage, including but not limited to natural disasters such has hurricane, tornado, storm, flood, high winds, and other weather related events. . . .
 (2) "Emergency" means:
 (a) The actual or threatened condition which has been or may be created by a disaster; or
 (b)(i) Any natural or man-made event which results in an interruption in the delivery of utility services to any consumer of such services and which affects the safety, health or welfare of a Louisiana resident;
 (ii) Any instance in which a utility's property is damaged and such damage creates a dangerous condition to the public.
 * * * (4) "Local governmental subdivision" means a parish of the state of Louisiana.
 (5) "Parish president" means the president of any parish, mayor-president, mayor of New Orleans (Orleans Parish), or police jury president.
Section 724 provides the procedures for the declaration of an emergency or disaster by the governor. Section 727 provides the procedures for the declaration of a local disaster or local emergency by a parish president. The purpose of these declarations is to give the governor and/or the parish president the reasonable and necessary powers to carry out the provisions of the Act. *Page 19 
In addition, Section 735 grants general immunity to personnel of the State or any political subdivision thereof, for any actions carried out pursuant to the Act resulting in the death of, or injury to persons, or damage to property as a result of such actions.
In summary, it is the opinion of this office that, in general, the use of parish equipment and labor on private property is prohibited by Article VII Section 14 of the Louisiana Constitution. An exception to this prohibition exists when parish equipment and labor are used for the benefit of private individuals in accordance with a systematic program of financial support for the needy.
Further, parish equipment and labor may be utilized on private property in the event of a declaration of an emergency or disaster in accordance with R.S. 29:721 et seq. I am enclosing a copy of the "Louisiana Emergency Assistance and Disaster Act" for your reference and convenience.
We recognize that instances often arise when a parish governing authority may be required to dispatch personnel and equipment in response to emergencies involving private individuals and/or property, without the necessity of a formal declaration of emergency. For example, emergency medical, fire and police units may be needed to protect life and property, or Public Works Department personnel and equipment may be dispatched to resume parish services which have been inadvertently interrupted. In such cases, discretion should be exercised so that the level of the services provided are not so excessive that they constitute an unconstitutional use of public personnel and equipment.
Trusting this adequately responds to your inquiry, I am
 Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY:__________________________
 ROBERT E. HARROUN, III,
 Assistant Attorney General
RPI/REH, lll/sfj
Enclosure Attachment *Page 35 
 OPINION NUMBER 97-425 Mayor Eugene V. Mayeaux Town of Pollock P.O. Box 576 Pollock, Louisiana71467
 90A-2 PUBLIC FUNDS — Loan, Pledge or Grants
 167-B UTILITES-Public
 An. VII, Sec. 14 R.S. 42:1461
 Town Council cannot adjust the water bill of a town resident orbusiness when all evidence indicates that the meter was properly readand that the meter was properly working.
 Dear Mayor Mayeaux:
You have requested an opinion of this office regarding the Town's ability to lower the water bills of town residents and businesses in the absence of evidence that the meter is faulty or that the meter was misread. Particularly, you advise that the Town Council adjusted the bill of one local business even though the meter had not been misread and the meter was determined to be working properly.
Please be advised that La.Const. Art. VII, Sec. 14, generally prohibits the loan, pledge or donation of public funds, property or things of value to any person, association or corporation, public or private. If the Town Council adjusts the water bill of a town resident or business when all evidence indicates that the meter was properly read and that the meter was properly working, and that the Town is not responsible for the amount claimed, then the Town Council is in essence donating a public thing of value to that resident or business, in violation of La.Const. Art. VII, Sec. 14. In our opinion, such action by the Town is in violation of the constitution and therefore illegal. In accord: Atty. Gen. Ops. Nos. 90-498, 88-428, and 78-1562.
On the other hand, the Town would not be prohibited from adjusting a water bill that is clearly incorrect, such as in the case of a misread meter.
It is incumbent us to further advise you that LSA-R.S. 42:1461 imposes a personal obligation upon public officials and employees and prohibits them from misappropriating, misapplying, converting or misusing any funds or property under the custody or control of the public entity in which the office or employment is held. The breach of this obligation gives rise to an action in favor of the public entity for the recovery of such funds or property. *Page 36 
We trust the foregoing to be of assistance. Please do not hesitate to contact us if we can be of assistance in other areas of the law.
 Yours very truly,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY:__________________________ JEANNE-MARIE ZERINGUE BARHAM Assistant Attorney General
 RPI:JMZB:jv
[1] Attorney General Opinion No. 02-0191
[2] La.R.S. 33:404